UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA


| PEARLENE PETE; BARRY PETE; JERILYN PETE; R.P.; G.P.; D.P.; G.P; and B.P., | ) ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) | 3:11-cv-00122 JWS |
| vs. | ) ) | ORDER AND OPINION |
| UNITED STATES OF AMERICA, | ) ) | [Re: Motion at Docket 55] |
| Defendant. | ) ) ) | |

## I. MOTION PRESENTED

At docket 55, defendant United States of America ("United States") filed a motion for summary judgment. It argues that summary judgment in its favor is warranted because plaintiffs Pearlene Pete, *et al.* ("Plaintiffs") have failed to present a qualified expert as required to prevail in this medical malpractice case. Plaintiffs oppose at docket 56. The United States filed a notice of waiver of reply at docket 59. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

Plaintiff Pearlene Pete became pregnant in 2008 and received care at the Alaska Native Medical Center ("ANMC").[1] Ms. Pete had a history of preeclampsia with two prior pregnancies, chronic hypertension, and hepatitis B.[2] Ms. Pete's pregnancy, however, progressed normally.[3] At 38-weeks pregnant, on February 12, 2009, Ms. Pete went to ANMC for a regular checkup. She met with a certified nurse midwife. During this checkup, fetal motion and heartbeat were detected. A fetal stress test was preformed, and the results were good.[4] Based on the Plaintiffs' expert's deposition, the records from the February 12, 2009 visit do not indicate that labor needed to be induced at that moment— the records do not indicate that the fetus was in distress or that Ms. Pete was in jeopardy.[5] The records from that visit note that Ms. Pete would be contacted the next day to schedule a labor induction.[6]

Ms. Pete was not contacted the next day. Instead, four days later, on Monday, February 16, 2009, Ms. Pete was seen again at ANMC for evaluation of induction of labor.[7] The records from that visit indicate that Ms. Pete had experienced contractions

---

[1] Doc. 31-1 at 21.

[2] Doc. 55-1 at 19.

[3] Doc. 55-1 at 30-31, 43.

[4] Doc. 55-1 at 41-42, 50, 56,

[5] Doc. 55-1 at 41-42, 56-59, 62.

[6] Doc. 55-1 at 58.

[7] Doc. 55-2 at 10.

over the prior weekend, but had not experienced leaking, bleeding or abdominal pain.[8] They indicate that Ms. Pete had felt the baby move the day prior to the visit. However, during the visit, Ms. Pete's health care providers at ANMC determined through an ultrasound that the baby was not alive.[9] Labor was induced and upon delivery, Ms. Pete's providers discovered that the umbilical cord was wrapped twice around the baby's neck.[10]

This lawsuit followed. Plaintiffs seek damages for medical malpractice pursuant to the Federal Tort Claims Act ("FTCA"). They assert that Ms. Pete's health care providers were negligent in delaying induction of labor and that such negligence caused the death of the baby. In addition to the United States, Plaintiffs named individual employees of ANMC, various tribal organizations, and federal agencies as defendants. The United States substituted as defendant for the individual employees and the tribal organizations. (Docs. 36, 37). The complaint was dismissed as to the individual federal agencies because the United States is the property party defendant under the FTCA. (Doc. 38).

All discovery deadlines have expired. The parties have exchanged expert reports. Plaintiffs designated one expert, Ms. Brenda Seibold, a family nurse practitioner licensed in Indiana and Illinois. Ms. Seibold's report discusses the applicable standards of care for nurse practitioners and whether Ms. Pete's attending

---

[8] Doc. 55-2 at 10-11.

[9] Doc. 55-2 at 10-11.

[10] Doc. 55-2 at 15; Doc. 55-2 at 51; 58-3 at 2-3.

-3-

certified nurse midwife met those standards on February 12, 2009.[11] In her report, Ms. Seibold concludes that the attending certified nurse midwife should have consulted with her supervising physician and considered hospitalizing Ms. Pete after the February 12, 2009 appointment because of her complicated health history. The United States deposed Ms. Seibold. It now moves for summary judgment based on the argument that Ms. Seibold, Plaintiffs' only designated expert, does not qualify as an expert in this particular case and that without an expert Plaintiffs cannot prove the essential elements of medical malpractice pursuant to Alaska law.

### III. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[12] The moving party has the burden of showing that there is no genuine dispute as to any material fact.[13] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[14] Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[15] All evidence presented by the non-movant must be believed for purposes of summary

---

[11] Doc. 55-2 at 31-33.

[12] Fed. R. Civ. P. 56(a).

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[14] *Id.* at 323-25.

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

-4-

judgment, and all justifiable inferences must be drawn in favor of the non-movant.[16] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[17]

## IV. DISCUSSION

The FTCA waives the United States' sovereign immunity for certain torts committed by employees of the government acting within their scope of employment.[18] Under the FTCA, state law provides the source of tort liability.[19] Here, because the event giving rise to liability occurred in Alaska, the United States' liability for this FTCA medical malpractice action is determined under Alaska's substantive law.

In Alaska, medical malpractice is governed by Alaska Statute § 09.55.540:

(a) In a malpractice action based on the negligence or wilful misconduct of a health care provider, the plaintiff has the burden of proving by a preponderance of the evidence

> (1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised under the circumstances, at the time of the act complained of, by health care providers in the field or specialty in which the defendant is practicing;
> (2) that the defendant either lacked this degree of knowledge or skill or failed to exercise this degree of care; and
> (3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

---

[16] *Id.* at 255.

[17] *Id.* at 248-49.

[18] 28 U.S.C. §1346(b)(1); *Delta Savings Bank v. United States*, 265 F.3d 1017, 1024 (9th Cir. 2001).

[19] *Delta Savings Bank*, 265 F.3d at 1024.

> (b) In malpractice actions there is no presumption of negligence on the part of the defendant.[20]

A plaintiff must establish the three elements of medical malpractice—duty, breach of duty, causation—through expert testimony, unless the negligence is clear enough so as to be evident to a lay person.[21] Nurses are considered "health care providers" under the statute, and thus any claim of medical malpractice against a nurse must be proven through expert testimony.[22]

The United States argues summary judgment is appropriate because Plaintiffs have not produced qualified, admissible expert testimony necessary to support a medical malpractice claim as is required under Alaska state law. Specifically, the United States argues that Ms. Seibold is not competent to testify on the matters at issue pursuant to Alaska Statute § 09.20.185 and that her testimony would nonetheless be inadmissible pursuant to Rule 702 of the Federal Rules of Evidence because she is not qualified in the field of obstetrics.

**A. Competency of Ms. Seibold**

Alaska Statute § 09.20.185 sets forth the criteria for expert witness testimony in professional negligence cases. It provides as follows:

> (a) In an action based on professional negligence, a person may not testify as an expert witness on the issue of the appropriate standard of care unless the witness is

---

[20]Alaska Stat. § 09.55.540.

[21]*Hertz v. Beach*, 211 P.3d 668, 680 (Alaska 2009).

[22]*Id.* at 681.

> (1) a professional who is licensed in this state or in another state or country;
> (2) trained and experienced in the same discipline or school of practice as the defendant or in an area directly related to a matter at issue; and
> (3) certified by a board recognized by the state as having acknowledged expertise and training directly related to the particular field or matter at issue.
>
> (b) The provisions of (a) of this section do not apply if the state has not recognized a board that has certified the witness in the particular field or matter at issue.[23]

As the United States notes, "the Ninth Circuit has not ruled on whether AS 09.20.185 is substantive and therefore applicable to FTCA actions or procedural and therefore inapplicable."[24] However, state expert witness competency rules are essentially substantive in nature, especially in medical malpractice cases when the governing state law requires a plaintiff to establish the standard of care through experts.[25] Under Rule 601 of the Federal Rules of Evidence, "state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision."[26] Indeed, the Ninth Circuit has held that in diversity cases, where, like FTCA

---

[23]Alaska Stat. § 09.20.185.

[24]Doc. 55 at p. 11.

[25]*See Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002) (stating that "[s]tate witness competency rules are often intimately intertwined with a state substantive rule" and holding that the state witness competency statute determined whether a physician could testify as an expert witness in the medical malpractice case because the statute was substantive in nature); *Wright v. United States*, 2008 WL 820557, at *4-5 (D. Ariz. Mar. 25, 2008) (finding a similar Arizona witness competency statute to be applicable in FTCA actions).

[26]Fed. R. Evid. 601.

-7-

cases, state law supplies the substantive framework, competency of a witness is determined by state law, citing Rule 601.[27]

Plaintiffs do not address the applicability of Alaska Statute § 09.20.185 in their response brief, and instead, discuss Rule 702 of the Federal Rules of Evidence, suggesting that they contend only Rule 702 controls the admission of expert testimony in this case. But § 09.25.185 is part of the substantive law the court must apply under the FTCA because it governs who can establish the elements of medical malpractice. Rule 702, on the other hand, is procedural because it addresses the admissibility of a witness's testimony once that witness is otherwise deemed competent to be an expert. It seeks to establish that the information provided by the expert is reliable and credible and is thus designed to ensure the fairness in administration of the case.[28]

The court concludes that Ms. Seibold is not a qualified expert witness in this case under § 09.20.185. In order to be considered qualified, Ms. Seibold must be "trained and experienced in the same discipline or school of practice as the defendant or in an area *directly related* to a matter at issue," and she must be "certified by a board recognized by the state as having knowledge, expertise and training *directly related* to the particular field or matter at issue."[28] Here, the particular field or matter at issue is obstetrics. Plaintiffs' complaint alleges that the health care providers at ANMC negligently delayed induction of labor after her appointment on February 12, 2009,

---

[27]*Higgenbottom v. Noreen,* 586 F.2d 719, 722 (9th Cir. 1978) (holding that the trial court judge properly looked to state law in deciding whether an expert witness was competent in a diversity case).

[28]*Legg,* 286 F.3d at 291.

[28]Alaska Stat. § 09.25.185 (emphasis added).

-8-

causing the wrongful death of Ms. Pete's unborn baby. Ms. Seibold does not have the required certification related to midwifery or obstetrics. She is not a certified nurse midwife or a licensed obstetrician/gynecologist, and she is not otherwise legally qualified to follow a pregnant patient to term and deliver a baby.[29] Also, Ms. Seibold does not have significant training or experience in obstetrics. She does not make decisions about whether to induce labor; she does not decide whether a vaginal delivery or c-section would be most appropriate; she does not evaluate whether a fetus is in distress or otherwise opine on the condition of a fetus; she is not qualified to read fetal ultrasounds; she has not been present at the delivery of a baby since she became a family nurse practitioner; she cannot distinguish between preeclampsia and severe hypertension in pregnant women.[30] Therefore, she does not meet the requirements of § 09.20.185 to be deemed a competent expert witness in this case.

**B. Admissibility of Ms. Seibold's testimony**

The United States also asserts that even if § 09.20.185 does not apply, Ms. Seibold's testimony is inadmissible under Rule 702 for the same reason—she is not qualified to testify on the subject of obstetrics. Rule 702 requires that an expert witness's testimony be reliable, meaning it is based on scientific knowledge regarding the subject, and relevant, meaning will assist the trier in determining a fact at issue.[31] While, unlike § 09.20.185, Rule 702 does not require proof of certification, it

---

[29] Doc. 55-1 at 14.

[30] Doc. 55 -1 at 15-20, 22, 31, 55; Doc. 55-2 at 17.

[31] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-591 (1993).

nonetheless requires that the witness possess knowledge about the relevant issues. The relevant issues raised by Plaintiffs' complaint relate to whether it was negligent to fail to induce labor between February 12 and February 16 of 2009 and, if so, whether that was the cause of the fetal demise in this case. As noted above, Ms. Seibold does not treat women for pregnancy after their first trimester. She does not make decisions about whether to induce labor. She cannot distinguish between preeclampsia and severe hypertension in pregnant women. She does not evaluate fetal distress or read fetal ultrasounds. Thus, under Rule 702, she does not have the requisite knowledge, skill, experience, training, or education related to the relevant issues in this case to be able to provide admissible testimony on all the elements of medical malpractice presented here.

Plaintiff argues that Ms. Seibold, as a family nurse practitioner, can testify generally about the duty a nurse has to consult with a doctor and can properly establish that the certified nurse midwife attending to Ms. Pete on February 12, 2009 breached that duty given Ms. Pete's medical history. However, even assuming that is the relevant standard of care and that there was a breach of such a duty, Ms. Seibold is not qualified to testify about causation in this case given that she is not qualified to diagnosis or treat fetal conditions and distress.

**C. The United States is entitled to summary judgment**

As discussed above, Ms. Seibold is not competent to provide expert testimony on the issues presented here. Ms. Seibold is Plaintiffs' only expert witness. Therefore, the United States is entitled to summary judgment because as a matter of law Plaintiffs

cannot prove the essential elements of a medical malpractice case without an expert witness.

Plaintiffs mention that the attending physicians and health care providers involved in this case could be considered experts and could provide testimony to establish Plaintiffs' theory of liability. Discovery is closed, and Plaintiffs point to no other expert evidence that could establish the elements of medical malpractice. Instead, the medical witness report in this case concludes that while Ms. Pete had hypertension, she did not have preeclampsia, and there were no secondary effects on the fetus. The report concludes that there was no urgent indication for delivery on February 12, 2009, and that the "sad result of this pregnancy was not the result of negligent care."[32]

## V. CONCLUSION

Based on the preceding discussion, the United States' motion for summary judgment is GRANTED. The clerk is directed to enter judgment in favor of defendant.

DATED at Anchorage, Alaska, this 22nd day of August 2013.

/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[32] Doc. 58-3.